2010 UT 67

**Michael H. JENSEN, Plaintiff
and Appellant,**

v.

**Allen K. YOUNG, Defendant
and Appellee.**

No. 20080727.

Supreme Court of Utah.

Nov. 23, 2010.

Philip R. Fishler, Peter H. Christensen, Sade A. Turner, Salt Lake City, for plaintiff.

Richard D. Burbidge, Andrew J. Dymek, Jefferson W. Gross, Salt Lake City, for defendant.

PARRISH, Justice:

## INTRODUCTION

¶ 1 This case involves legal malpractice claims brought by Dr. Michael H. Jensen against attorney Allen K. Young for failing to file defamation claims against United Televi-

sion, Inc. and Mary Sawyers (collectively, "Channel 4") within the statute of limitations. We are asked to determine whether the district court erred in granting summary judgment in favor of Mr. Young because Dr. Jensen failed to file his malpractice claims within the four-year statute of limitations. Specifically, we must decide whether the district court erred in not applying the discovery rule to toll Dr. Jensen's malpractice claims until an adverse judgment was entered against Dr. Jensen in his underlying suit against Channel 4. Because the statute of limitations on Dr. Jensen's malpractice claims expired before Dr. Jensen filed suit against Mr. Young and because Dr. Jensen knew or should have known of his injuries and possible cause of action for malpractice before the statute of limitations expired, we conclude that the discovery rule does not apply. We therefore affirm the district court's grant of summary judgment in favor of Mr. Young.

## BACKGROUND

¶ 2 Because this case comes to us on summary judgment, we construe the facts in a light most favorable to Dr. Jensen, the non-moving party. This case relates to three news stories that Channel 4 broadcasted on September 5, 1995, June 17, 1996, and November 6, 1996. These news stories implied that Dr. Jensen illegally prescribed drugs to patients. The day after the first broadcast aired, Dr. Jensen's employer terminated him and the Utah State Department of Professional Licensing ("Department") began an investigation into his conduct. Dr. Jensen hired attorney Max Wheeler to represent him in connection with the Department investigation but sought alternative counsel to represent him with respect to a possible civil suit against Channel 4.

¶ 3 In September 1995, Dr. Jensen met with Mr. Young to determine whether Mr. Young would be interested in representing him in a civil suit against Channel 4. At this meeting, Dr. Jensen showed Mr. Young a tape of the first broadcast, and Mr. Young allegedly expressed interest in representing Dr. Jensen in his case against Channel 4. But Mr. Young told Dr. Jensen he wanted to await the outcome of the Department investigation before agreeing to take Dr. Jensen's case. At no time during this meeting did Mr. Young warn Dr. Jensen of the one-year statute of limitations applicable to defamation claims.

¶ 4 No retainer agreement was signed as a result of Dr. Jensen's first meeting with Mr. Young. But Dr. Jensen asserts that, at the time, he believed Mr. Young was his attorney. Despite this belief, Dr. Jensen also met with other attorneys to discuss his possible civil claims against Channel 4. One of these attorneys declined to take Dr. Jensen's case against Channel 4 because of statute of limitations concerns.

¶ 5 On November 12, 1996, shortly after the third broadcast aired, Dr. Jensen sent Mr. Young a letter and a transcript of the third broadcast. In response to this letter, Mr. Young allegedly told Dr. Jensen that "we shouldn't sit on this any longer, the third newscast is inflammatory and . . . we need to file a complaint." On April 9, 1997, Dr. Jensen signed a fee agreement pursuant to which he retained Mr. Young to represent him in his suit against Channel 4.

¶ 6 On June 27, 1997, more than a year after the first and second broadcasts had aired, Mr. Young filed a complaint against Channel 4 asserting five claims: (1) fraud, (2) intentional interference with prospective economic relations, (3) negligent misrepresentation, (4) defamation, and (5) negligence. Shortly after the complaint was filed, Mr. Young informed Dr. Jensen that he had missed the statute of limitations for the defamation claims associated with the first and second broadcasts. But when Dr. Jensen asked Mr. Young how this would affect his case, Mr. Young allegedly downplayed the impact and insisted that Dr. Jensen could recover his damages arising from the first and second broadcasts under his alternative claim of fraud, which was not barred by the statute of limitations. On January 28, 1999, Mr. Young withdrew as Dr. Jensen's counsel in the lawsuit, and Dr. Jensen retained attorney Dale Gardiner to represent him.

¶ 7 Thereafter, Channel 4 moved to dismiss Dr. Jensen's defamation claims arising

from the first and second broadcasts, asserting they were barred by the statute of limitations. It also moved to dismiss the fraud and negligent misrepresentation claims as being legally insufficient. At this same time, Dr. Jensen moved to amend his complaint to assert four additional claims, which included a claim for false light invasion of privacy. The district court granted Channel 4's motion to dismiss the fraud, negligent misrepresentation and defamation claims that arose from the first and second broadcasts. And it simultaneously granted Dr. Jensen's motion to amend his complaint. Shortly after Dr. Jensen's defamation claims were dismissed, Dr. Jensen and Mr. Gardiner discussed the possibility of bringing a malpractice action against Mr. Young for missing the statute of limitations on the defamation claims. However, Mr. Gardiner told Dr. Jensen he was unwilling to pursue a malpractice case against Mr. Young because he did not sue other lawyers.

¶ 8 Dr. Jensen's civil suit against Channel 4 proceeded to trial on the remaining claims. Of these claims, only the defamation and false light claims are relevant to this appeal. At the conclusion of the trial, the jury returned a verdict in Dr. Jensen's favor, awarding him over two million dollars in damages on his false light claims arising from the first three broadcasts and his defamation claim arising from the third broadcast. In 2005, we vacated the jury's verdict on Dr. Jensen's false light claims, holding that these claims were also barred by the one-year statute of limitations. *Jensen v. Sawyers*, 2005 UT 81, ¶¶ 34, 58, 130 P.3d 325. Additionally, we vacated the jury's award of economic damages associated with the defamation claim arising from the third broadcast because there was no evidence that Dr. Jensen suffered any economic losses as a result of the third broadcast. *Id.* ¶¶ 107–16. Rather, any economic losses he sustained were the result of one or both of the previous broadcasts. *Id.*

¶ 9 On February 5, 2007, Dr. Jensen filed a malpractice lawsuit against Mr. Young. The lawsuit sought to recover damages from Mr. Young for missing the filing deadline on Dr. Jensen's defamation claims. In response, Mr. Young filed a motion for summary judgment, arguing that Dr. Jensen's malpractice claims were barred by the four-year statute of limitations. *See* Utah Code Ann. § 78B–2–307(3) (2008).[1] The district court agreed with Mr. Young and held that Dr. Jensen's malpractice claims were barred by the statute of limitations. Dr. Jensen appealed. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (Supp.2010).

## STANDARD OF REVIEW

¶ 10 "We review a district court's decision to grant summary judgment for correctness, [affording] no deference to the district court's conclusions, and we view the facts and all reasonable inferences in the light most favorable to the nonmoving party." *Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 16, 215 P.3d 933. " 'The applicability of a statute of limitations and . . . the discovery rule are questions of law, which we review for correctness.' " *Colosimo v. Roman Catholic Bishop*, 2007 UT 25, ¶ 11, 156 P.3d 806 (alteration in original) (quoting *Spears v. Warr*, 2002 UT 24, ¶ 32, 44 P.3d 742). However, "application of the discovery rule also 'involves a subsidiary factual determination— the point at which a person reasonably should know that he or she has suffered a legal injury.' " *Id.* (quoting *Spears*, 2002 UT 24, ¶ 32, 44 P.3d 742). We therefore review the district court's decision to grant Mr. Young's motion for summary judgment for correctness but review the subsidiary factual determination in the light most favorable to the nonmoving party, Dr. Jensen.

## ANALYSIS

¶ 11 Dr. Jensen argues that the district court erred in not applying the discovery rule to toll the statute of limitations on his malpractice claims against Mr. Young. Specifically, Dr. Jensen argues that his malpractice claims against Mr. Young were tolled until an adverse ruling was made in his underlying

---

1. This statute was numbered as section 78–12–25(3) when the issues in this dispute arose. Because the amendment renumbering the statute made no substantive changes, we refer to the statute as currently numbered.

suit against Channel 4, which he claims did not occur until this court reversed the jury verdict in favor of Dr. Jensen. *See Jensen v. Sawyers,* 2005 UT 81, ¶ 143, 130 P.3d 325. We disagree.

¶ 12 The statute of limitations on Dr. Jensen's malpractice claims were triggered when Mr. Young missed the deadline for filing Dr. Jensen's defamation claims. Because Dr. Jensen knew or should have known of his injury and his possible cause of action for malpractice before the limitations period ran, we conclude that the discovery rule does not apply to Dr. Jensen's malpractice claims. We first discuss whether Dr. Jensen filed his malpractice claims within the limitations period. We then discuss whether the discovery rule applies to toll the limitations period on Dr. Jensen's malpractice claims.[2]

## I. DR. JENSEN FAILED TO FILE HIS MALPRACTICE CLAIMS WITHIN THE LIMITATIONS PERIOD

¶ 13 First, we address whether Dr. Jensen filed his malpractice claims before the limitations period expired. The "statute of limitations begins to run upon the occurrence of the last event required to form the elements of the cause of action." *Williams v. Howard,* 970 P.2d 1282, 1284 (Utah 1998). The last event required to form the elements of a cause of action for legal malpractice occurs on the date the limitations period runs on a client's claim. *See id.* Therefore, a client's claim for legal malpractice accrues on the date that the attorney misses the statute of limitations. *Id.; see also Huff v. Roach,* 125 Wash.App. 724, 106 P.3d 268, 270 (2005) (indicating that the statute of limitations begins to run on a legal malpractice claim when the attorney "misse[s] the statute of limitations, effectively invading [his client's] legal interests"); *see also Adams v. Paul,* 11 Cal.4th 583, 46 Cal.Rptr.2d 594, 904 P.2d 1205, 1209 (1995) ("In the 'classic' missed statute situation, in which the attorney negligently fails to file the underlying lawsuit within the applicable statutory period and

does nothing further, the plaintiff suffers actual harm at the time the statutory period lapses because, assuming the claim was otherwise viable, the right and/or remedy of recovery on the action has been substantially impaired.").

¶ 14 Because Dr. Jensen's malpractice suit against Mr. Young was premised on the fact that Mr. Young missed the statute of limitations on Dr. Jensen's defamation claims, the limitations period on Dr. Jensen's malpractice action against Mr. Young began to run when the statute of limitations expired on Dr. Jensen's defamation claims. The limitation period on Dr. Jensen's defamation claims ran on September 5, 1996 for the first broadcast and on June 17, 1997 for the second broadcast. Thus, his legal malpractice claims against Mr. Young arose on those dates.

¶ 15 The limitations period for a legal malpractice claim is four years. *See* Utah Code Ann. § 78B–2–307(3) (2008). Applying the four-year statute of limitations to the dates on which Dr. Jensen's legal malpractice claims arose reveals that Dr. Jensen's malpractice claims against Mr. Young expired on September 5, 2000, for damages arising from the first broadcast and on June 17, 2001 for damages arising from the second broadcast. Because Dr. Jensen did not file his malpractice claims against Mr. Young until February 7, 2007 which is more than six years after the limitations period expired for the first broadcast and more than five years after the limitations period expired for the second broadcast, his legal malpractice claims against Mr. Young were not filed within the applicable statute of limitations.

## II. THE DISCOVERY RULE DOES NOT APPLY TO DR. JENSEN'S CLAIMS

¶ 16 Having determined that Dr. Jensen did not file his malpractice claims before the limitations period expired, we now consider whether special circumstances exist, which would toll the running of the statute of limitations. Dr. Jensen argues that the discov-

**2.** Mr. Young also argues that we should affirm the district court's grant of summary judgement on the alternative ground that Dr. Jensen's malpractice claims are without merit. Because we affirm the district court on the statute of limitations, we need not and do not reach Mr. Young's alternative argument.

ery rule applies to toll the statute because he did not discover his injuries until we vacated the jury's verdict, which had awarded him over two million dollars on his claims of false light invasion of privacy arising from the first three broadcasts and defamation arising from the third broadcast. Dr. Jensen reasons that until we issued our opinion vacating the verdict, he was seemingly uninjured by the loss of his defamation claims relating to the first and second broadcasts. But Mr. Young argues that the discovery rule is not applicable to toll the statute because Dr. Jensen knew or should have known he was injured when the district court dismissed his defamation claims. In other words, Mr. Young argues that Dr. Jensen suffered legal injury upon the dismissal of his defamation claims despite the fact that the two million dollar jury verdict mitigated the extent of his damages. We agree with Mr. Young.

 ¶ 17 "The discovery rule is a judicially created doctrine under which the statute of limitation does not begin to run until the plaintiff learns of or in the exercise of reasonable diligence should have learned of the facts which give rise to the cause of action." *Williams v. Howard,* 970 P.2d 1282, 1284 (Utah 1998). The discovery rule applies in three circumstances:

> (1) in situations where the discovery rule is mandated by statute; (2) in situations where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct; and (3) in situations where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action.

*Warren v. Provo City Corp.,* 838 P.2d 1125, 1129 (Utah 1992) (citations omitted). Dr. Jensen argues the exceptional circumstances prong of the discovery rule applies in this case.

 ¶ 18 The "ultimate determination" under the exceptional circumstances prong of the discovery rule "turns on a balancing test." *Id.* But before a plaintiff is eligible for application of the balancing test, he must make a threshold showing that he was " '[un-]aware of his injuries or damages and a possible cause of action before the statute of limitations expire[d].' " *Williams,* 970 P.2d at 1286 (quoting *Atwood v. Sturm, Ruger & Co.,* 823 P.2d 1064, 1065 (Utah 1992)). We therefore turn to the threshold issue of whether Dr. Jensen was aware of (1) his injuries or damages, and (2) a possible cause of action for malpractice before the statute of limitations expired on his malpractice claims against Mr. Young.

## A. Dr. Jensen Was Aware That He Had Been Legally Injured By The Loss of His Defamation Claims

 ¶ 19 First, we address whether Dr. Jensen was aware of his injuries or damages before the statute of limitations expired. In the legal malpractice setting, injury is defined as the " 'loss or impairment of a right, remedy, or interest' " that otherwise would have been available but for the attorney's negligence. *Wagner v. Sellinger,* 847 A.2d 1151, 1156 (D.C.2004) (quoting Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 22.11, at 380 (5th ed. 2000)); *Brown v. Behles & Davis,* 135 N.M. 180, 86 P.3d 605, 608 (2004) ("A party sustains actual injury when the alleged malpractice results in the loss of a right, remedy or interest ...." (internal quotation marks omitted)). When an attorney negligently misses a statutory deadline, which forecloses a client's potential cause of action, the client is injured. *See Williams,* 970 P.2d at 1284–86; *Adams v. Paul,* 11 Cal.4th 583, 46 Cal.Rptr.2d 594, 904 P.2d 1205, 1209 (1995) (indicating that a client is injured when an attorney negligently fails to file the client's claim within the statute of limitations). If the client has knowledge of his injury, he is precluded from asserting the discovery rule.

 ¶ 20 Here, Dr. Jensen was aware or should have been aware that he had been injured. Mr. Young specifically told Dr. Jensen that he had "blown" the statute of limitations for Dr. Jensen's defamation claims and that, as a result of his mistake, Dr. Jensen's defamation claims were likely barred. And Dr. Jensen received additional notice that he had been injured when the district court

dismissed his defamation claims as being untimely. Dr. Jensen therefore knew or should have known that he was injured before the limitations period expired on his malpractice claims.[3]

### B. Dr. Jensen Knew or Should Have Known of His Possible Malpractice Action

 ¶ 21 We next address whether Dr. Jensen knew or reasonably should have known of the existence of a possible cause of action for malpractice. A plaintiff is reasonably aware of a potential cause of action for malpractice if the plaintiff has actual notice of the malpractice " 'or by reasonable diligence and inquiry should know, the relevant facts of the' " malpractice. *See Colosimo v. Roman Catholic Bishop*, 2007 UT 25, ¶ 17, 156 P.3d 806 (quoting *Baldwin v. Burton*, 850 P.2d 1188, 1196 (Utah 1993)). "In other words, if a party has knowledge of some underlying facts, then that party must reasonably investigate potential causes of action because the limitations period will run." *Id.* In *Williams*, where an attorney negligently missed the deadline for filing a notice of claim, we held that the client was aware of a possible cause of action for malpractice because the client knew his attorney's negligence resulted in the client's claim being time barred. 970 P.2d at 1283–86. We concluded that because the attorney informed the client of his mistake well within the four-year statute of limitations for a malpractice claim, the client was aware of his possible malpractice claim before the statute of limitations ran. Therefore, the discovery rule did not apply. *Id.* 1285–86.

¶ 22 In this case, Dr. Jensen knew or should have known of his possible malprac-

tice action against Mr. Young before the limitations period expired. Like the attorney in *Williams*, Mr. Young informed Dr. Jensen well within the limitations period that he had missed the statutory deadline and that, as a result, the defamation claims were likely time barred. And, unlike the client in *Williams*, Dr. Jensen received *additional* notice of his malpractice claims before the statute of limitations expired when the district court dismissed Dr. Jensen's defamation claims on the basis that they were time barred. Indeed, Dr. Jensen discussed bringing a possible malpractice claim against Mr. Young with his new attorney, Mr. Gardiner, and incurred legal fees in opposing Channel 4's motion to dismiss his defamation claims. Nevertheless, Dr. Jensen failed to file his malpractice claims until February 2007, more than six years after the expiration of the statute of limitations on his malpractice claim associated with the first broadcast and more than five years after the statute of limitations on his claim associated with the second broadcast.

 ¶ 23 Despite these uncontested facts, Dr. Jensen argues that he could not have discovered his injury until an adverse judgment was entered in his underlying suit against Channel 4. To support the proposition that the statute of limitations on a legal malpractice suit is tolled until an adverse judgment is rendered in the underlying proceeding in which the malpractice occurred, Dr. Jensen relies on *Welborn v. Shipman*, 608 So.2d 334, 335 (Ala.1992); *Wagner*, 847 A.2d 1151; *Lucey v. Law Offices of Pretzel & Stouffer*, 301 Ill.App.3d 349, 234 Ill.Dec. 612, 703 N.E.2d 473 (1998); *Johnson v. Cornett*, 474 N.E.2d 518 (Ind.Ct.App.1985); and *K.J.B., Inc. v. Drakulich*, 107 Nev. 367, 811 P.2d 1305 (1991) (per curiam). But Dr. Jen-

---

3. Dr. Jensen also argues that he could not have discovered his injuries because Mr. Young allegedly insisted that Dr. Jensen could recover his damages under his alternative claim of fraud. But this argument misses the point. Whether Dr. Jensen believed that he could recover his damages under an alternative cause of action does not change the fact that he had knowledge of his injury. The discovery rule does not apply where a plaintiff knows of or should have known of his injuries *or* damages. *See Williams*, 970 P.2d at 1286; *see also Huff v. Roach*, 125 Wash. App. 724, 106 P.3d 268, 270 (2005) ("In the legal

malpractice context, injury is the invasion of another's legal interest, while damages are the monetary value of those injuries."). In this case, Dr. Jensen knew or should have known that he had been both injured and damaged. Dr. Jensen knew or should have known he was injured when the district court dismissed his causes of action for defamation. Furthermore, he knew or should have known that he suffered damages when he incurred legal fees in defending against the motion to dismiss and in amending his complaint to add alternative theories of recovery.

sen's reliance on these cases is misplaced as none of them involve the application of the discovery rule. Rather, these cases involve the question of whether the statute of limitations even began to run because the events required to form the elements of a malpractice claim had yet to occur. *See Williams,* 970 P.2d at 1284. Specifically, the plaintiffs in these cases did not sustain any actual damage, which is a required element of a legal malpractice claim, until there was an adverse ruling in the underlying suit. *See Bennett v. Jones, Waldo, Holbrook & McDonough,* 2003 UT 9, ¶ 41, 70 P.3d 17 (defining actual damages as an element of a legal malpractice claim); *see also Welborn,* 608 So.2d at 336 (holding that until an adverse ruling was made on the plaintiff's motion for a new evidentiary hearing, the plaintiff did not sustain any injury for which damages could be awarded); *Wagner,* 847 A.2d at 1156 (holding that the plaintiff could not "articulate any injury that could yield ascertainable damages"); *Lucey,* 234 Ill.Dec. 612, 703 N.E.2d at 478–79 (holding that plaintiff did not incur any damages directly attributable to her attorney's neglect); *Johnson,* 474 N.E.2d at 519 (holding that the plaintiff sustained no damages until the trial court issued a final order); *K.J.B., Inc.,* 811 P.2d at 1306 (holding that the statute of limitations on the plaintiff's claim for negligent prosecution did not accrue because the plaintiff had sustained no damages). Because the plaintiffs in these cases sustained no actual damages until there was an adverse ruling, their malpractice claims had not accrued and the limitations period had not begun to run.

¶ 24 Unlike the plaintiffs in the cases on which Dr. Jensen relies, Dr. Jensen sustained actual damages before this court issued its opinion fully resolving his underlying case against Channel 4. Mr. Young's failure to timely file Dr. Jensen's defamation claims resulted in Dr. Jensen being completely deprived of his interest in viable claims for defamation based on the first and second broadcasts. Additionally, Dr. Jensen incurred damages in the form of legal fees incurred in defending against the dismissal of his defamation claims and in attempting to mitigate his damages associated with that dismissal by amending his complaint to plead alternative theories of recovery. Because Dr. Jensen sustained both injury and damages when Mr. Young failed to timely file his defamation claims, the limitations period on Dr. Jensen's malpractice claims began to run at that point.

¶ 25 We understand that the question of whether Dr. Jensen incurred damages is complicated by the existence of alternative remedies that he hoped would mitigate all or a substantial portion of his damages. But Dr. Jensen's attempts to mitigate the extent of his damages by pleading alternative claims did not affect the fact that he sustained damages. Dr. Jensen could have simply filed his malpractice action and then requested that the court stay the action until the conclusion of the proceedings against Channel 4. Alternatively, the uncertainty as to the extent of Dr. Jensen's damages could have been addressed by the parties entering into a tolling agreement.

¶ 26 In summary, we are unpersuaded that the limitations period on Dr. Jensen's malpractice claims was tolled until an adverse judgement was rendered in his underlying suit against Channel 4. We conclude that the district court did not err in refusing to apply the discovery rule to toll Dr. Jensen's malpractice claims.

## CONCLUSION

¶ 27 We hold that Dr. Jensen did not file his malpractice claims against Mr. Young within the statute of limitations. We also hold that the discovery rule does not toll the statute of limitations on Dr. Jensen's malpractice claims. We therefore affirm the district court's grant of summary judgement on the basis that Dr. Jensen's malpractice claims against Mr. Young are barred by the statute of limitations.

¶ 28 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice NEHRING, and Judge GLENN IWASAKI concur in Justice PARRISH's opinion.

¶ 29 Due to his retirement, Justice WILKINS did not participate herein. Judge GLENN K. IWASAKI sat.