2014 UT App 220

# THE UTAH COURT OF APPEALS

PAMELA BRIDGE PERO,
Plaintiff and Appellant,
*v.*
JODY KNOWLDEN AND DENISE KNOWLDEN,
Defendants and Appellees.

Opinion
No. 20130386-CA
Filed September 18, 2014

Seventh District Court, Price Department
The Honorable Douglas B. Thomas
No. 090700542

D. David Lambert, Leslie W. Slaugh, and Alyssa L.
Lambert, Attorneys for Appellant

Don M. Torgerson and Mandie J. Torgerson,
Attorneys for Appellees

JUDGE JOHN A. PEARCE authored this Opinion, in which
JUDGE STEPHEN L. ROTH and SENIOR JUDGE RUSSELL W. BENCH
concurred.[1]

PEARCE, Judge:

¶1      Pamela Bridge Pero filed a complaint in 2009 against her
son, Jody Knowlden,[2] seeking the reconveyance of real property.
Pero had conveyed the property to Knowlden in 1998 with the

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special
assignment as authorized by law. *See generally* Utah Code Jud.
Admin. R. 11-201(6).

2. Pero also sued Jody Knowlden's wife, Denise Knowlden, but she
appears to have been only a nominal defendant. We treat the
matter as one between Pero and her son.

understanding that Knowlden would obtain a mortgage to allow him to retire personal debt and then reconvey the property to Pero once he had paid off the mortgage. After a two-day trial, the district court found Pero's claims were time barred. Pero appeals. We largely affirm the district court's decision, but we vacate it in part and remand for the entry of further findings of fact and conclusions of law.

## BACKGROUND

¶2     Pero owned a house and property located in Scofield, Utah. She raised her family in the house until 1985. After that, Pero rented the Scofield property to third parties and allowed her family to use it as a vacation property.

¶3     In 1991, Knowlden suffered a gunshot wound that caused him to accrue substantial medical bills. After approximately six years of making little progress in paying them down, Knowlden approached Pero and proposed that she permit him to use the Scofield property as collateral for a loan to pay off his bills. Pero, Knowlden, and other members of Pero's family discussed Knowlden's proposal for about a year. In April 1998, Pero agreed to transfer title in the Scofield property to Knowlden.

¶4     Although Pero and Knowlden never memorialized their agreement in writing, the district court found that the initial transfer of the deed was "expressly conditioned upon the promise that the deed would be reconveyed upon Knowlden's payment of the loan." The district court also found the oral agreement had three additional terms: (i) Knowlden could only obtain a single loan; (ii) he was to pay taxes on the property; and (iii) the loan was not to exceed $20,000. The district court also found that Pero believed the loan would be paid off within three to five years.

¶5     On July 3, 1998, Pero quitclaimed the Scofield property to Jody and Denise Knowlden as joint tenants. The deed was recorded on July 6, 1998. On the same date, Knowlden recorded a deed of trust against the Scofield property in the amount of $48,000. Pero

was not aware of the initial loan amount until this action commenced. On February 28, 2000, Knowlden recorded a second deed of trust against the Scofield property in the amount of $71,500. Pero learned of the second loan in 2000 and was "furious." Knowlden paid the first loan off with the second loan, but the Scofield property remained encumbered by the second loan in an amount greater than the $20,000 to which the parties had agreed.

¶6      Pero and the rest of the family continued to use the Scofield property for recreation and gatherings between 1998 and 2004. During that time, Pero had keys to the property. Pero, her husband, and other family members provided materials and labor to improve the Scofield property during that time.

¶7      In early 2004, Knowlden changed the locks on the house and placed a note on the door warning against trespassing on the land. Pero wrote Knowlden a letter on May 23, 2004, expressing anger and dismay that she and her other children had been locked out. Knowlden did not respond. Pero penned another letter dated February 25, 2005, stating that she "fe[lt] very strongly" that Knowlden needed to transfer the property back to her. Again, Knowlden did not respond. Pero wrote a final letter on July 27, 2005, asking Knowlden to quitclaim the property back to her as soon as possible; again, Knowlden did not respond to this request. Pero also asked Knowlden on multiple occasions—apparently beginning in 2000—about his intent to reconvey, but Knowlden always evaded the question. Indeed, Knowlden never expressly confirmed or denied that he would reconvey the property until the commencement of this litigation, when he expressly indicated that he did not intend to return ownership to Pero.

¶8      Pero filed a complaint with the district court on May 11, 2009, alleging constructive trust and unjust enrichment causes of action. She later amended her complaint to add claims of breach of agreement and rescission. All of Pero's causes of action sought to compel Knowlden to reconvey the Scofield property to her. After a two-day trial in February 2013, the district court concluded that Knowlden breached the agreement in July 1998 when he secured the first, $48,000 loan and that Pero had actual knowledge of this

breach in 2000. Additionally, the court found that although Knowlden had not yet breached the agreement to reconvey the property, Pero had knowledge in 2004 of all facts necessary to put her on notice to inquire whether Knowlden intended to reconvey. The district court applied a four-year statute of limitations to each of Pero's claims and concluded that each of them was time barred. Pero appeals from the district court's order denying her claims.

ISSUES AND STANDARDS OF REVIEW

¶9 Pero contends that the district court erred in concluding that statutes of limitations barred her claims. "The applicability of a statute of limitations and the applicability of the discovery rule are questions of law, which we review for correctness." *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 18, 108 P.3d 741 (citation and internal quotation marks omitted). "[A]pplication of the discovery rule also involves a subsidiary factual determination—the point at which a person reasonably should know that he or she has suffered a legal injury." *Jensen v. Young*, 2010 UT 67, ¶ 10, 245 P.3d 731 (citation and internal quotation marks omitted). "We review this subsidiary factual determination under a clearly erroneous standard." *Bowen v. Bowen*, 2011 UT App 352, ¶ 4, 264 P.3d 233.

ANALYSIS

I. Breach of Agreement and Rescission

¶10 The district court concluded that Knowlden breached the terms of the parties' agreement in July 1998 when he took out a loan for $48,000, and again in February 2000 when he secured a second loan for $71,500. The court concluded that, as of 2000, Pero had constructive notice of the July 1998 breach and actual notice of the February 2000 breach. To the extent that Pero's claims for breach of agreement and rescission were predicated on either of these two events, those claims—filed in May 2009—were barred by the four-year statute of limitations. *See* Utah Code Ann. § 78B-2-307(1)(a) (LexisNexis 2008) ("An action may be brought within four

years: (1) after the last charge is made or the last payment is received: (a) upon a contract, obligation, or liability not founded upon an instrument in writing . . . ."); *McKean v. McBride*, 884 P.2d 1314, 1317 (Utah Ct. App. 1994) (applying the four-year statute of limitations to a claim seeking rescission of an oral contract).

¶11 However, the district court also concluded that "Knowlden ha[d] not yet breached the agreement to reconvey the Scofield property because the loan has not been paid off and still encumbers the home in the approximate amount of $60,000." This ruling suggests that Knowlden's contractual obligation to reconvey the Scofield property pursuant to the agreement survived his initial breaches. But the court also found that, due to the events of 2004, "Pero had knowledge of all facts necessary to put her on notice to inquire as to whether Knowlden did not intend to return the Scofield property to her (a clear indication of repudiation of the agreement)." The court concluded that Pero "knew nothing in May 2009 that she did not know in 2004" and that her claims for breach of agreement and rescission were also barred because she filed her complaint more than four years after Knowlden's 2004 actions gave her constructive notice that he had repudiated his future obligation to reconvey.[3]

¶12 Under Utah law, "an action may be maintained for breach of contract based upon anticipatory repudiation by one of the parties to the contract." *Breuer-Harrison, Inc. v. Combe*, 799 P.2d 716, 723 (Utah Ct. App. 1990); *see Hurwitz v. David K. Richards & Co.*, 436 P.2d 794, 796 (Utah 1968). However, the non-repudiating party need not sue immediately when an anticipatory breach occurs. Rather, the non-repudiating party may continue to "[t]reat the contract as still binding and wait until the time arrive[s] for its

---

3. Although Pero asserts in her brief that "[Knowlden] never breached or repudiated his obligation to repay the loan and return title to Pero until after the suit was filed," she does not directly challenge the factual underpinnings of the district court's conclusion that Knowlden's actions in 2004 put Pero on notice that he had repudiated the agreement.

performance and at such time bring an action on the contract." *Hurwitz*, 436 P.2d at 796.

¶13    If Knowlden's contractual obligation to reconvey the Scofield property still existed in 2004, the acts the district court found to have constituted repudiation would not necessarily have started the limitations period, because Pero had the option to "continue to treat the contract as operable and encourage performance without waiving any rights under the contract." *Kasco Servs. Corp. v. Benson*, 831 P.2d 86, 89 (Utah 1992). Under such an analysis, Pero's claim for reconveyance would not be barred by the statute of limitations, because the time for reconveyance has not yet arrived.

¶14    The district court's order does not clearly address the options available to Pero after Knowlden's anticipatory repudiation. For example, the order does not confront whether Knowlden will be obligated to convey the property at some future date or whether Pero will be somehow time barred from seeking return of the property when Knowlden's time to perform arises. To the contrary, the order contains the seemingly irreconcilable conclusions that (1) the time for performance is not yet due and (2) the statute of limitations bars the claim to enforce performance. We vacate the district court's dismissal of Pero's breach of agreement claim and remand for the entry of additional findings of fact and conclusions of law to resolve this ambiguity. This will permit the district court to clarify what continuing obligations, if any, Knowlden has under the agreement and whether Pero has lost the ability to compel performance of those duties or seek damages if Knowlden breaches when performance is due.

## II. Constructive Trust and Unjust Enrichment

¶15    Pero also challenges the district court's determination that the statute of limitations began running on Pero's constructive trust and unjust enrichment claims no later than 2004, when Knowlden locked Pero out of the Scofield property, posted a no-trespassing notice, and failed to respond to Pero's letter complaining about the lockout. Pero argues that there was "no clear repudiation of the

obligation to reconvey the property prior to filing of the complaint." She further argues that because there was no clear repudiation, Knowlden "did not meet his burden to prove a statute of limitations defense and Pero's claims to regain title are not time barred by the statute of limitations."

¶16    A constructive trust claim is subject to a four-year statute of limitations. *See Estate of Davis v. Davis*, 2011 UT App 343, ¶ 8, 265 P.3d 813. The four-year statute of limitations applies because there is not a specific limit otherwise provided by law. *See* Utah Code Ann. § 78B-2-307(3) (LexisNexis 2008); *American Tierra Corp. v. City of W. Jordan*, 840 P.2d 757, 760 (Utah 1992). The district court also properly employed that same four-year statute of limitations in evaluating the timeliness of Pero's unjust enrichment claim. *See Russell/Packard Dev., Inc. v. Carson*, 2003 UT App 316, ¶ 11, 78 P.3d 616, *aff'd*, 2005 UT 14, 108 P.3d 741. This statute of limitations is subject to a discovery rule that provides that the time for filing an action is tolled until a plaintiff "knows or should know of the alleged breach or repudiation." *Snow v. Rudd,* 2000 UT 20, ¶ 11, 998 P.2d 262.

¶17    However, even after giving Pero the benefit of the discovery rule, the district court found that she knew or should have known of the basis for her equitable claims more than four years prior to the filing of her complaint. The district court concluded,

> Pero knew nothing regarding the breach in May 2009 (at the time she filed the suit) that she did not already know in 2000. She was aware of the breach, a loan which was over three and a half times the agreed upon amount, in 2000 and was furious about it. Regarding the repudiation, Pero knew nothing in May 2009 that she did not know in 2004. This unfortunately is a clear case of a plaintiff simply sitting on her rights.

As with the district court's breach of agreement ruling, it is difficult to discern whether the court based its statute of limitations analysis of Pero's equitable claims on Knowlden's initial 1998 and 2000

breaches of the agreement, his 2004 repudiation of the agreement, or both. However, Pero has failed to persuade us that either of the district court's possible theories is incorrect as applied to Pero's constructive trust and unjust enrichment claims.

¶18   To the extent that the district court determined that the statute of limitations began running upon Knowlden's initial breaches, the court relied on the facts that "(i) [Pero] had constructive knowledge of a material breach in July 1998, (ii) she had actual knowledge of a material breach of the agreement as of the year 2000 and was 'furious'; and (iii) she did not file suit until May 2009." The district court concluded that "Pero's knowledge of the breach of the agreement was clear and absolute in 2000, and much more than a hint of breach or repudiation." Thus, to the extent Pero's equitable claims accrued in 1998 or 2000, those claims are barred by the statute of limitations.

¶19   Similarly, the district court found that Pero had notice of Knowlden's repudiation of the agreement prior to May 2005. The court stated,

> [P]rior to May 2005 Pero had knowledge of all facts necessary to put her on notice to inquire as to whether Knowlden did not intend to return the Scofield property to her (a clear indication of the repudiation of the agreement) based on the following: (i) the lockout in 2004, (ii) the May 2004 letter and the February 2005 letters requesting reconveyance which were unanswered, and (iii) Knowlden's complete silence and unwillingness to discuss the Scofield property since 2000 despite repeated attempts and requests by Pero to do so in writing and in person.

Notwithstanding this finding, Pero argues on appeal that the district court "found that Pero did not have a 'clear indication' that Knowlden had breached or repudiated his obligation to reconvey title until she commenced action and the Knowldens filed their answer."

¶20 Contrary to Pero's argument, the district court did not find that "there was no clear repudiation of the constructive trust until Knowlden filed his answer to Pero's Complaint." The finding that Pero interprets as one of "no clear repudiation" actually recites that "Knowlden's first *express* repudiation of reconveyance of the Scofield property was not given until commencement of this action." (Emphasis added.) Despite the absence of an express repudiation, however, the district court also found that Knowlden's actions in 2004 gave Pero "a clear indication of the repudiation of the agreement."

¶21 Utah law does not require that a repudiation—even between close family members—be express. To the contrary, the discovery rule applied to constructive trusts may be satisfied by either actual or constructive notice. *Snow v. Rudd,* 2000 UT 20, ¶ 11, 998 P.2d 262 ("[A] trustee cannot take advantage of a statute of limitations defense until something has occurred to give the beneficiary a clear indication that a breach or repudiation has occurred, or, alternatively, the circumstances must be such that [the beneficiary] must be charged with knowledge of such a repudiation or breach." (second alteration in original) (citation and internal quotation marks omitted)); *Estate of Davis v. Davis,* 2011 UT App 343, ¶ 10, 265 P.3d 813 ("'[I]t is appropriate to protect the interests of a beneficiary by applying the discovery rule to toll the statute of limitations until the beneficiary knows *or should know* of the alleged breach or repudiation.'" (emphasis added) (quoting *Snow,* 2000 UT 20, ¶ 11)).

¶22 Pero has not persuaded us that the district court committed any error by finding that she had constructive notice of Knowlden's repudiation. In her reply brief, Pero attempts to distinguish this case from *Snow v. Rudd,* 2000 UT 20, 998 P.2d 262, by arguing that the plaintiff in *Snow* failed to inquire about the status of the trust, while Pero "inquired and inquired and inquired" but "[h]er inquiries were met with silence and evasion." We fail to see how Knowlden's "silence and evasion" is less indicative of repudiation than the circumstances presented in *Snow. Cf. Smargon v. Grand Lodge Partners, LLC,* 2012 UT App 305, ¶¶ 18–20, 288 P.3d 1063 (discussing contractual repudiation resulting from the failure to

give adequate assurances that performance will occur). Pero also attempts to distinguish this case from *Snow* by arguing that "there was no written instrument to uncover or obtain that would have allowed Pero to determine that the trust with her son had been breached or repudiated" and that "in *Snow*, the property had been conveyed away and there was no cure possible." However, neither argument provides Pero an escape from *Snow*'s holding that the statute of limitations on a constructive trust claim begins to run on the date "the beneficiary knows or should know of the alleged breach or repudiation." *Snow*, 2000 UT 20, ¶ 11. We therefore affirm the district court's conclusion that Pero had notice of Knowlden's repudiation more than four years prior to the filing of her complaint.

¶23    We have affirmed the district court's findings that Pero had notice of Knowlden's breaches of the parties' agreement as of 2000 and notice of his subsequent repudiation as of 2004. We thus conclude that the district court properly dismissed Pero's equitable claims for the present reconveyance of the property regardless of whether the court relied on Knowlden's initial breaches or his subsequent repudiation of the parties' agreement as the date upon which the statute of limitations began to run.[4]

---

4. This result may appear to be incongruous with the result we reach on Pero's breach of agreement claim. However, Pero has provided us with no case law applying the remedies available for anticipatory breach of a contract to a constructive trust claim. Indeed, it does not appear that those contract principles have been applied in constructive trust cases. *Compare Snow v. Rudd*, 2000 UT 20, ¶ 11, 998 P.2d 262 ("[A] statute of limitations period will not begin to run until the beneficiary knows or through reasonable investigation could have learned of a breach or repudiation."), *with Breuer-Harrison, Inc. v. Combe*, 799 P.2d 716, 725 (Utah Ct. App. 1990) ("[A]n innocent party, confronted with an anticipatory repudiation, may continue to treat the contract as operable and urge performance by the repudiating party without waiving any right to sue for that repudiation." (citation and internal quotation marks omitted)).

CONCLUSION

¶24    We affirm the district court's determination that Pero's claims for constructive trust, unjust enrichment, and rescission are barred by the applicable statutes of limitations. However, we vacate the district court's dismissal of Pero's breach of agreement claim and remand for further findings and conclusions regarding Knowlden's continuing obligation to reconvey the Scofield property as discussed herein.

————