*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 46**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MONTY MOSHIER
and KELLY MOSHIER,
*Petitioners,*

*v.*

DARWIN C. FISHER,
*Respondent.*

No. 20180623
Filed August 13, 2019

On Certiorari to the Utah Court of Appeals

Fifth District, St. George
The Honorable G. Michael Westfall
No. 150500584

Attorneys:

Russell S. Walker, Salt Lake City, for petitioners

Michael F. Skolnick, Salt Lake City, for respondent

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUSTICE PEARCE, and JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

### Introduction

¶1 Kelly and Monty Moshier lost their opportunity to collect $874,805.68 owed to them in a bankruptcy proceeding when their attorney, Darwin C. Fisher, failed to file their nondischargeability claim before the statute of limitations expired. Several years later, the Moshiers sued Mr. Fisher for malpractice. The district court dismissed their malpractice claim as untimely. Because we find that the malpractice claim did not accrue until the bankruptcy court

confirmed the final distribution plan, the Moshiers' claim was timely. Accordingly, we reverse.

**Background**

¶2    Kelly and Monty Moshier hired Darwin Fisher to represent them in a lawsuit against Allen and Laura Cottam, involving claims of fraud, misrepresentation, and breach of warranty. The Moshiers obtained a judgment against the Cottams in the amount of $785,710.88. The judgment included findings of fraud, misrepresentation, and punitive damages.

¶3    In September 2010, the Cottams filed for bankruptcy. The Moshiers again hired Mr. Fisher to represent them in the bankruptcy proceedings. He timely filed the Moshiers' proof of claim.[1] Because the Moshiers' claim was based on a judgment for money obtained by fraud, their claim was exempt from discharge under section 523 of the Bankruptcy Code.[2] Creditors claiming this exemption from discharge must commence an independent action by filing a complaint alleging nondischargeability.[3] But Mr. Fisher failed to file the Moshiers' claim for nondischargeability by the deadline, December 29, 2010.[4] Instead, he filed the claim almost a year after the deadline, which the bankruptcy court dismissed as untimely. On January 31, 2012, the bankruptcy court confirmed the Cottams' bankruptcy plan for distribution.[5]

---

[1] In bankruptcy, a "proof of claim" is a "creditor's written statement that is submitted to show the basis and amount of the creditor's claim." *Proof of claim*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also* FED. R. BANKR. P. 3001 & 3002.

[2] 11 U.S.C. § 523(a) ("A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . for money . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . .").

[3] FED. R. BANKR. P. 4007; *see also* 11 U.S.C. § 523(c).

[4] This was the deadline pursuant to Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

[5] A "bankruptcy plan" is a "detailed program of action formulated by a debtor, or its creditors in certain circumstances, to govern the debtor's rehabilitation, continued operation or liquidation, and payment of debts. The bankruptcy court must

(Continued)

¶4    In March 2012, Mr. Fisher informed the Moshiers that he missed the deadline for filing their nondischargeability claim and that their claim had been dismissed. He told them he had filed a claim with his malpractice insurance company and suggested that they retain new counsel for the bankruptcy proceedings. The Moshiers assert they did not believe they needed to initiate any legal action against Mr. Fisher, because they believed his claim with his malpractice insurer was the equivalent of them initiating a legal proceeding. They also argue that they believed their claim was fully secured and that they would still receive the full value of their claim.[6] By 2013, the bankruptcy trustee informed the Moshiers they would not receive payment of their full claim. To date, the Moshiers

---

approve the plan before it is implemented." *Bankruptcy plan*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[6] The Moshiers allege that Mr. Fisher told them the secured claims would not be discharged, but we note that the proof of claim clearly states that only $75,000 is secured. The Moshiers' briefing asserts that "Fisher filed a timely proof of claim in the Cottam Bankruptcy as a *fully secured* claim, which was prima facie evidence of the validity and amount of the claim of $874,805.68." But that is not what the proof of claim states. The proof of claim document states a claim for $800,000—including $75,000 in *secured* debt and $725,000 in *unsecured* debt. This is an amended proof of claim, so perhaps the Moshiers are referring to the amount in the original proof of claim, but that amount would seem to be irrelevant now. The amended proof of claim also does not list an annual interest rate. This is one of a number of inconsistencies in the Moshiers' briefing to us.

We are also not certain about the actual value of the Moshiers' claim. They assert they lost out on $874,805.68. This is the amount stated by the court of appeals in its decision below. *Moshier v. Fisher*, 2018 UT App 104, ¶ 1, 427 P.3d 486. The actual value of the claim is unclear from the record. The Moshiers' briefing states that the underlying judgment awarded in the district court case was $785,710.88. They state that Mr. Fisher then filed a proof of claim for $874,805.68. But the record shows that Mr. Fisher filed a proof of claim for $800,000. The Moshiers' demand letter sent to Mr. Fisher asserted that their claim against the Cottams was for $800,000. The Moshiers' complaint against Mr. Fisher then alleges $897,005.93 in damages. We assume that this is attributable to interest or additional attorney fees, but that is never explained in the briefing.

have received $58,151.72 of their secured claim and $139,508.64 of their unsecured claim, for a total of $197,660.36.[7]

¶5 In June 2014, Mr. Fisher's malpractice counsel, Michael Skolnick, sent the Moshiers a letter stating that the malpractice insurance company saw many "hurdles" that severely reduced the value of their claim. At that time or shortly thereafter, the Moshiers hired an attorney, Russell Walker, to represent them. He sent a letter to Mr. Skolnick on June 17, 2014, outlining the damage done by Mr. Fisher's failure to timely file the Moshiers' nondischargeability claim. The Moshiers filed their malpractice action against Mr. Fisher on October 6, 2015. The district court dismissed their claim as untimely, finding that the statute of limitations had expired on December 29, 2014—four years after Mr. Fisher missed the filing deadline for the nondischargeability claim. The Moshiers appealed, and the court of appeals affirmed. The Moshiers then petitioned this court for certiorari, which we granted. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(a).

**Standard of Review**

¶6 We must determine when a legal malpractice claim accrues and the statute of limitations begins to run where an attorney misses the deadline for filing a nondischargeability claim in a bankruptcy proceeding. On certiorari, we review "the court of appeals' decision for correctness, without according any deference to its analysis."[8] The application of a statute of limitations and grant of a motion to dismiss are both questions of law, which we review for correctness.[9] But application of a statute of limitations may also involve

---

[7] There is another discrepancy here. Monty Moshier's declaration in the malpractice action states that they received $139,508.64 of their $741,821.28 unsecured claim. It is unclear where these numbers come from as the proof of claim lists the unsecured claim at $725,000. Again, perhaps the difference is interest or attorney fees, but that is never explained. The brief states that they received "$139,508.64 of their *prorated* unsecured claim."

[8] *State v. Ainsworth*, 2017 UT 60, ¶ 13, 423 P.3d 1229.

[9] *Thomas v. Hillyard*, 2019 UT 29, ¶ 9, --- P.3d ---; *Educators Mut. Ins. Ass'n v. Allied Prop. & Cas. Ins. Co.*, 890 P.2d 1029, 1030 (Utah 1995) (stating that the district court's ruling on a motion to dismiss is reviewed for correctness).

"subsidiary factual determination[s,]" which we review "in the light most favorable to the non-moving party."[10]

## Analysis

¶7   The Moshiers argue that their legal malpractice claim did not accrue until they learned that the bankruptcy trustee "would not pay all of their claims," on or about July 31, 2014.[11] Mr. Fisher asserts that the claim accrued when he missed the deadline to file their nondischargeability claim—December 29, 2010. We find that the Moshiers' malpractice claim accrued when the bankruptcy court confirmed the final bankruptcy plan—January 31, 2012. Based on that accrual date, the Moshiers' malpractice claim was timely filed. Accordingly, we reverse.[12]

¶8   Under Utah law, a malpractice action must be brought within a four-year limitation period.[13] A statute of limitations "begins to run when the last event necessary to complete the cause of action occurs."[14] The elements of a legal malpractice cause of action

---

[10] *Colosimo v. Roman Catholic Bishop of Salt Lake City*, 2007 UT 25, ¶ 11, 156 P.3d 806 (internal quotation marks omitted).

[11] There is another inconsistency here. The court of appeals opinion notes that the "Moshiers' opening brief identifies both the latter part of 2013 and July 14, 2014, as dates at which they first learned that they would not receive the full amount of their claim." *Moshier v. Fisher*, 2018 UT App 104, ¶ 4 n.3, 427 P.3d 486. It is unclear on what date the Moshiers believe they had the requisite knowledge. But our decision relies on the date that the bankruptcy court confirmed the final plan for distribution, and the Moshiers' claim was timely based on that date. So, like the court of appeals, our analysis "is unaffected whether we use the earlier or the latter date." *Id.*

[12] The Moshiers also argue for application of the discovery rule to toll the statute of limitations. Because we find that their claim was timely filed absent application of the discovery rule, we need not address that argument.

[13] *See* UTAH CODE § 78B-2-307(3); *see also Thomas v. Hillyard*, 2019 UT 29, ¶ 11.

[14] *Sevy v. Sec. Title Co. of S. Utah*, 902 P.2d 629, 634 (Utah 1995); *see also DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 843 (Utah 1996) (stating that a "cause of action accrues when a plaintiff could have first filed and prosecuted an action to successful completion"); *Ash v.*

(Continued)

based on negligence are "(i) an attorney-client relationship; (ii) a duty of the attorney to the client arising from their relationship; (iii) a breach of that duty; (iv) a causal connection between the breach of duty and the resulting injury to the client; and (v) actual damages."[15] Because a claim does not accrue until "a plaintiff suffers actual harm or damages," a plaintiff "must wait until some harm manifests itself" to file a malpractice claim.[16] So "where there is an ongoing proceeding, the resolution of which informs the fact of malpractice or damages, the claim does not accrue until the conclusion of that proceeding."[17]

¶9     Here, Mr. Fisher argues that the Moshiers' malpractice claim accrued when he missed the deadline for filing their nondischargeability action. He asserts that this case is controlled by our decision in *Jensen v. Young*, which held that a claim for malpractice accrued on the date that an attorney missed a statute of limitations deadline for filing a claim.[18] This was also the basis for the court of appeals' affirmance. But, as we recently articulated in *Thomas v. Hillyard*, our decision in *Jensen* was inconsistent with our *Clark v. Deloitte & Touche LLP*[19] opinion.[20] So in *Hillyard* we disavowed our holding in *Jensen*.[21]

¶10 The Moshiers, on the other hand, argue that their claim accrued when they learned that the bankruptcy trustee would not

---

*State*, 572 P.2d 1374, 1379 (Utah 1977) ("A cause of action arises the moment an action may be maintained to enforce a legal right.").

[15] *Christensen & Jensen, P.C. v. Barrett & Daines*, 2008 UT 64, ¶ 22, 194 P.3d 931 (internal quotation marks omitted).

[16] *Seale v. Gowans*, 923 P.2d 1361, 1364 (Utah 1996) (explaining that "the law does not recognize an inchoate wrong"); *see also Hunsaker v. State*, 870 P.2d 893, 897 (Utah 1993) (stating that plaintiffs must plead actual damages along with breach of duty in order to sustain a cause of action for negligence).

[17] *Hillyard*, 2019 UT 29, ¶ 17.

[18] 2010 UT 67, ¶ 20.

[19] 2001 UT 90, 34 P.3d 209.

[20] *Hillyard*, 2019 UT 29, ¶¶ 16–18 ("Because *Jensen* is inconsistent with *Deloitte*, . . . we reaffirm the *Deloitte* reasoning, and we overrule *Jensen* to the extent it is inconsistent with *Deloitte* and this opinion.").

[21] *Id.*

pay the full value of their claim. They contend that this case is analogous to *Clark v. Deloitte & Touche LLP*, in that the bankruptcy proceeding here is the equivalent of the tax court proceeding in that case. In *Deloitte*, the Clarks received incorrect advice from their accountant, were audited by the IRS, and appealed the IRS's findings.[22] After their appeal was final, the Clarks sued their accountant for malpractice.[23] We held that the claim for accounting malpractice accrued when the underlying action was final and no appeal of right was available—when the tax court issued a final decision on appeal.[24] We also noted that "if the Clarks had received erroneous advice from a tax attorney, as opposed to an accountant," the accrual date would have been the same.[25] In *Boyd v. Jones*, the Tenth Circuit applied our *Deloitte* decision to the legal malpractice context.[26] And in *Hillyard*, we reaffirmed that where the resolution of an ongoing proceeding will inform "the fact of malpractice or damages, the claim does not accrue until the conclusion of that proceeding."[27] This is so because, at that point, the malpractice plaintiff's harm is sufficiently final.

¶11 In the case now before us, we conclude that the damages and harm were sufficiently final when the bankruptcy court confirmed the final bankruptcy plan, and that the claim therefore accrued on that date.[28] Until that stage of the bankruptcy concluded, the Moshiers could not be certain whether Mr. Fisher's alleged malpractice had resulted in damages, or whether they could expect to be made whole despite his error. Mr. Fisher missed a filing

---

[22] 2001 UT 90, ¶¶ 4–9.

[23] *Id.* ¶ 10.

[24] *Id.* ¶ 25.

[25] *Id.* ¶ 31 (citing *Amfac Distrib. Corp. v. Miller*, 673 P.2d 792, 793 (Ariz. 1983); *Pizel v. Zuspann*, 795 P.2d 42, 56 (Kan. 1990)).

[26] *Boyd v. Jones*, 85 F. App'x 77, 81–83 (10th Cir. 2003).

[27] 2019 UT 29, ¶ 17.

[28] We also note that this date has been used by other jurisdictions. *See, e.g.*, *Treasure Valley Bank v. Killen & Pittenger, P.A.*, 732 P.2d 326, 328 (Idaho 1987) (following the damages rule and concluding that the malpractice claim accrued when the bankruptcy plan was confirmed and the creditor lost its opportunity to secure post-confirmation interest on its claim).

deadline, which precluded the Moshiers from litigating their nondischargeability claim. But the harm was not sufficiently final until the bankruptcy plan was finalized.[29] It was at that point that the Moshiers knew, with certainty, that they would not receive the full value of their claim, and that Mr. Fisher's actions had, in fact, prejudiced them. And based on that accrual date, the Moshiers' October 6, 2015 malpractice claim was timely.

### Conclusion

¶12 A cause of action for legal malpractice accrues when a plaintiff's harm is sufficiently final. The Moshiers' claim accrued when the bankruptcy court confirmed the Cottams' final bankruptcy plan. Their action was therefore timely when filed. Accordingly, we reverse.

_____

---

[29] Importantly, the Moshiers did not appeal the final bankruptcy plan. Had they appealed, their claim would have accrued upon conclusion of that appeal.